MINER D. WOODLING, PLAINTIFF, v. WESTPORT HOTEL OPERATING CO. ET AL., RESPONDENTS, LOUIS HECKEL ET AL. PARTNERS, APPELLANTS.—63 S. W. (2d) 207.

Kansas City Court of Appeals, June 12, 1933.

*Morrison, Nugent, Wylder & Berger* and *Douglas Stripp* for respondent.

*Edward E. Naber* for appellant.

BLAND, J.—This is an equitable mechanics' lien action. Intervenors seek a lien against certain real estate, upon which a hotel was erected, for equipment furnished for a barber shop therein. The court denied intervenors a mechanics' lien, for the reason that they did not become a party to these proceedings within the time required by statute, but rendered a personal judgment against defendant,

Westport Hotel Operating Company, and in favor of intervenors in the sum of $1914.94. Intervenors have appealed.

The facts show that the Westport Hotel Operating Company, on March 7, 1925, commenced the construction of what is known as the President Hotel, in Kansas City; that on May 21, 1926, intervenors, within the time required by statute, filed their mechanics' lien statement in the office of the clerk of the circuit court. This statement was in the amount of $3743.71, and covered the purchase price of barber shop furniture, equipment and supplies furnished by plaintiff. On June 11, 1926, within the time required by law, intervenors filed an amended lien statement showing a payment of $2000 upon the account. On the same day the plaintiff herein (Woodling) filed this suit in equity, asking a mechanics' lien against the property for certain materials and labors furnished by him. The owner of the property, the Westport Hotel Operating Company, and various trustees in deeds of trust upon the property, as well as other mechanics' lien claimants, were made parties defendant. However, plaintiff was not made a party.

On August 19, 1926, or within ninety days after the filing of their lien claim and within the time required by law, intervenors, in the present suit, brought a separate action at law to enforce and foreclose their lien. On March 4, 1927, intervenors filed a motion in the present suit to be made parties defendant. Said motion was sustained and, on March 19, 1927, they filed their intervening petition, asking for a mechanics' lien, based upon their original and amended lien statements, filed on May 21 and June 11, 1926.

The hotel property, on January 8, 1927, was conveyed to the President Hotel Corporation, as a result of the bankruptcy of the Westport Hotel Operating Company, and the President Hotel Corporation thereafter made a deed of trust to the Fidelity National Bank and Trust Company, as trustee, securing certain indebtedness. On August 23, 1927, intervenors filed a motion praying the court to make the President Hotel Corporation and the Fidelity National Bank and Trust Company, parties to this suit. The motion was sustained and the Hotel Corporation and the Fidelity National Bank and Trust Company were made parties defendant, and they pleaded to the intervening petition.

The answer of the President Hotel Corporation was a general denial. That of the Fidelity National Bank and Trust Company was a general denial coupled with the allegation that the lien of its deed of trust was a senior and prior one to that, if any, of the intervenors.

From the decree rendered, which we have described, supra, intervenors appealed to the Supreme Court, thinking a constitutional question was involved. But that court found no such question was

in the case and transferred it to this court. A more detailed statement of the facts relating to the case will be found in the decision of the Supreme Court transferring the cause. [See Woodling v. Westport Hotel Operating Company et al., 55 S. W. (2d) 477.]

It appears that the lower court rejected intervenors' lien because they did not become parties to this cause within ninety days from the time of the filing of their lien statement, the court being of the opinion that such a requirement is made under the provisions of Section 3187, Revised Statutes 1929.

Intervenors insist that they complied with the law by bringing their suit at law within the ninety day period (see Sec. 3172, R. S. 1929), but in any event, the ninety day provision of Section 3187 is a Statute of Limitations and, as the respondents did not plead the statute, either by demurrer or answer, it was waived.

We think that the contention relative to the Statute of Limitations must be sustained. The Supreme Court has construed the ninety-day provision of Section 3172, which is analogous to a like provision in Section 3187, as not a Statute of Limitations that goes to the right of action, itself, but purely one of a defensive character and, which, if relied upon, must be raised by the defendant in a proper way. [See Am. Radiator Co. v. Conner Plumb. & Heating Co., 277 Mo. 548; McPherrin v. Lumbermen's Sup. Co., 211 Mo. App. 385.]

Respondents claim that they properly raised the question as to the Statute of Limitations by objecting to the introduction of any evidence on the part of the intervenors at the opening of the trial. However, this was not the proper way to preserve the point. [37 C. J. pp. 1212, 1213; Am. Radiator Co. v. Conner Plumb. & Heat. Co., supra; McPherrin v. Lumbermen's Sup. Co., supra; McCollum v. Smith, 199 S. W. 271.] We find the cases relied upon by respondents to be not in point.

It is claimed by respondents that intervenors anticipated the defense of the Statute of Limitations by pleading that they filed their suit at law within ninety days after filing their lien statement and that, under such circumstances, a general denial raised the statute Intervenors pleaded those circumstances upon the theory that the filing of the suit at law, under all of the circumstances, was a sufficient compliance with the Statute of Limitations. The general denials may have raised an issue as to whether the suit at law was filed within the ninety-day period but as there was no allegation or claim in the pleading of the intervenors that they had entered their appearance and filed their pleading in the equity suit within the ninety-day period (and as a matter of fact the pleading on its face showed to the contrary) no issue as to that matter was raised by the general denials.

It is claimed by respondents that the lien statement does not

measure up to the requirements of the statute that a just and true account be filed by lien claimants. [See Sec. 3161, R. S. 1929.] Both the original and amended statements include a long list of small articles denominated "merchandise account." In May, 1926, the intervenors were paid $2000 by the Westport Hotel Operating Company, without any designation by it as to what items the amount should be applied in payment. On May 27, 1926, intervenors, through their attorney, wrote the Westport Hotel Operating Company that the $2000 had been applied as follows: Merchandise account, $355.71; Fixtures and furniture account, $1644.29. The amount of $355.71 was sufficient to pay for the items in the merchandise account and the amended lien statement shows that such items had been paid in that manner.

The fixtures and furniture account consisted of a mirror case, a special cabinet and a live steam sterilizer used to steam towels, also stools, chairs, boot-black foot rests, manicuring cups, trays, etc. The item of the "mirror case" came to $1740, the "special cabinet" to $215 and the live steam sterilizer to $322. The whole fixtures and furniture account amounted to $4484, less twenty-five per cent or $1121, leaving a balance of $3363 based on this account. The amended lien statement shows that a payment of $1644.29 had been applied to the fixtures and furniture account, which would leave a balance due of $1718.71. The amended lien statement, upon its face, shows that this sum was all that was claimed as a lien, although the intervening petition mentions, no doubt inadvertently, in this connection the sum of $1743.71. At the opening of the trial the intervenors disclaimed any attempt to obtain a lien except for the mirror case, the special cabinet and the live steam sterilizer.

It is claimed that the lien statement does not constitute a just and true account, within the meaning of the statute, because of the seventy-two items composing the merchandise account, which are clearly not lienable, and of the nine items in the fixtures and furniture account which intervenors at the trial admitted were not lienable. In addition to this, respondents claim that no lien can be obtained for the steam sterilizer. They also claim that the lien statement is defective, in that, the $1644.29 was credited to the fixtures and furniture account, which amounted to 48.8% of the total amount and, as the cost of the mirror case was $1740, less twenty-five per cent, or a net cost of $1305, when the 48.8% credit is made on this item it would leave a balance of $668.16. That a like calculation made upon the item of the special cabinet would reduce the net cost of that item to $82.56 and the steam sterilizer to $123.65, or a total of $874.37, whereas, the lien statement asks for $2277 less 25% or $1707.75, for these items. In other words, it is claimed that the account has not been properly credited with the payment made by the Westport Hotel Operating Company.

If it is shown that the filing of an inaccurate lien was the result of inadvertence and mistake, there being no intention or desire to defraud, the lien will be upheld. [Gerard B. Allen & Co. v. The Frumet M. & S. Co., 73 Mo. 668, 693; Walden v. Robertson, 120 Mo. 38; Landreth Mch. Co. v. Roney, 185 Mo. App. 474; Nicol H. & P. Co. v. Constr. Co., 187 Mo. App. 584; Craig v. McNichols Furn. Co., 187 S. W. 793; Schroeter Bros. Hdw. Co. v. Croatian "Sokol" Gymnastic Ass'n, 58 S. W. (2d) 995, 1000; Banner Lbr. Co. v. Robson, 182 Mo. App. 611; Ittner v. Hughes, 133 Mo. 679.]

"It was not, however, the object of the statute to create a Procrustean rule of literal exactitude in the filing of lien accounts. If such were its purpose a claim, otherwise valid and enforcible under the mechanics' lien law, would suffer defeat from errors of computation, inadvertence or mistake, or a mere preparation of the account irrespective of the good faith of the lienor. Such absurd consequence is not in the purview of the statute, which is highly remedial and favored by the law." [Hydraulic Press Brick Co. v. McTaggert, 76 Mo. App. 347, 353.]

"It is true that the statute requires a just and true account to be filed. And it has been said that 'the lienor must stand or fall by the lien which he files and the dates and items which he specifies.' [Coe v. Ritter, 86 Mo. 287.] But the present policy of our courts is to require but a fair and substantial compliance with the statute. And what was said in Coe v. Ritter, supra, has been greatly modified by the decision in Mitchell Planing Mill Co. v. Allison, supra; and the tendency of our courts is toward decided liberality in applying and enforcing the mechanic's lien statement." [Banner Lbr. Co. v. Robson, 182 Mo. App. 611, 624.]

In Uthoff v. Gerhard, 42 Mo. App. 256, 260, the court held that an omission of a credit must be intentional in order to vitiate the lien. [See also Shepard v. Railroad, 150 Mo. App. 98.]

. There was no omission of any credit in the amended lien statement. The credit of $2000 is shown, but instead of changing the amended statement so as to omit the merchandise account and reduce the fixtures and furniture account, the old statement was used and the credit shown at the end thereof. Any one reading the statement, as a whole, can readily see that the claim made for the items under the heading "merchandise account" has been paid and by easy calculation can ascertain the amount which should be credited to the fixtures and furniture account. It is true that there are nine items amounting to $1653.25, exclusive of the mirror case, the special cabinet and the live steam sterilizer, that are admittedly not lienable, but the evidence shows that each of these items was actually furnished and it would appear that there was no fraud or bad faith in the claim made for them and, plaintiff, at the opening of the trial, disclaimed any desire to obtain a lien for them. [See Ittner v. Hughes,

supra.] We must rule against respondents on this point. We have examined the cases cited by respondents on this point and find them inapplicable.

We are of the opinion that the evidence is not sufficient to show that the steam sterilizer was lienable, but this appears to have been an innocent mistake made on the part of the intervenors and, as it was not such an item that could, in no event, become a fixture and, therefore, a lienable item, we are of the opinion that intervenors should not be charged with bad faith in making a claim for it.

The facts in reference to this item show that the sterilizer was a round nickle-plated contrivance which sat upon legs and rested upon the tile floor in the barber shop. The only attachment it had to the building was at its top by two steam pipes leading to the ceiling. By loosening these pipes the sterilizer could be moved around the barber shop from place to place. One of the witnesses testified that he did not know of any other barber shop in Kansas City equipped with a sterilizer. One of plaintiff's witnesses testified, "I guess there is only about two in the city." The only evidence whatever tending to show that the sterilizer was a fixture was that it was attached to the steam pipes, but these could be easily unscrewed and the sterilizer removed. A fixture of this class is made up of three elements, annexation, adaption and intent. The latter two are more important than the one relating to the method by which the chattel is attached to the freehold. There is no evidence bearing upon the question of intent. As to adaption, there was no evidence that such sterilizers were in general use or commonly present as a fixture or, otherwise in barber shops. It appears that it was a mere chattel and not a fixture that became a part of the freehold. [See Donnewald v. The Turner R. E. Co., 44 Mo. App. 350, 354.]

It, therefore, appears that the intervenors are entitled to a lien only upon the special cabinet and the mirror case in the total sum of $750.72. The court erred in refusing the lien for any amount. The judgment will, therefore, be reversed and the cause remanded with directions to the lower court to enter judgment in favor of intervenors for a lien against the property in said amount, in addition to the personal judgment against the Westport Hotel Operating Company. All concur.