**DREW'S HARDWARE & APPLIANCE CO., Inc.**

v.

**WILLIS HOUSING PROJECTS, Inc. et al.**

No. 21959.

Kansas City Court of Appeals.

Missouri.

April 5, 1954.

Whitson Rogers, Kansas City, for appellants.

Frank L. Cohn, David H. Bresler, Harry A. Hall, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiffs, Drew's Hardware and Appliance Company, Inc., instituted this suit to establish and enforce a mechanic's lien for the value of 6 Launderall washing machines furnished in construction of an apartment house in Kansas City, Missouri. It also sought judgment for a balance due on automatic driers furnished for the same purpose. Trial was had to the court and judgment was for plaintiff in the sum of $1,803, which was adjudged to be a lien, on account of the Launderalls; and for $110.80, balance due plaintiff on account of automatic driers. No lien was adjudged on the latter account. Defendants appeal.

Plaintiff is an appliance dealer. Defendants will be mentioned and identified in the following paragraphs hereof.

R. L. Willis and Company, Inc., (being R. L. Willis and members of his family) owned real estate located at 625–629 East Armour Boulevard, Kansas City, Missouri. Willis Housing Projects, Inc., was organized. The officers and stockholders were Mr. Willis and members of his family. R. L. Willis & Company, Inc., conveyed the above real estate to the last named corporation on September 2, 1948.

On October 17, 1947 a corporation known as Willis Engineering & Construction Company (No. 1), with a declared capital of $25,000, was organized. The officers and stockholders were, exclusively, Mr. Willis and members of his family. On June 17, 1948, said corporation, Mr. Willis president, entered into a printed and typewritten contract with plaintiff, whereby plaintiff agreed to sell and deliver to Willis Engineering & Construction Company (No. 1) sixty-two Hardwick gas ranges for $4,212.90; six Hot Point electric driers for $924; and six Launderall washing machines, in crates, for the price of $1,497. Said contract was placed in evidence. These appliances were, according to the general effect of said contract, to be used in construction of an apartment house located on the real estate above-mentioned which, it was therein recited, Willis Engineering & Construction Company had, on that date, contracted with the owner to build.

Willis Engineering & Construction Company (No. 1) was dissolved on August 6, 1948, and liquidated as of August 28, 1948. No notice of its dissolution or liquidation was ever served on plaintiff.

Willis Engineering & Construction Company (No. 2) was organized and incorporated on August 6, 1948. Its president was Mr. Willis, and its officers and stockholders were Mr. Willis and members of his family, together with Mr. Strandberg and his son, John L. Jr. On September 8, 1948, Willis Housing Projects, Inc., conveyed the real estate on Armour Boulevard to Paul M. Jones, in trust for The John Hancock Mutual Life Insurance Company, of Boston, Mass., to secure a loan of $311,400.

Walter Drew, plaintiff's real owner, testified to the effect that, during the first part of 1948, Mr. Willis called by telephone and inquired about the purchase of Launderall washing machines; that, later, Mr. Willis and his son-in-law came to the store; that they insisted on Launderalls, refusing to accept any other make of machine because some one in the family had one and liked it; that a contract was eventually entered into and signed for the sale of six machines, which were delivered July 18, 1949, at the apartment; that plaintiff was not to install or service the Launderalls; that no complaint was made to him regarding the machines; that he did not know, until after institution of this suit, that corporation (No. 1 ) had been dissolved and that a new corporation of the same name, with Mr. Willis as president, had been incorporated on that same day, and had carried on the construction project where the Launderalls were delivered and installed.

Mr. Lawrence, a former employee of plaintiff, testified to the effect that Mr. Willis called him at plaintiff's place of business, and demanded delivery of the six Launderalls that had been ordered; that witness urged him to take some other brand because of difficulty in procuring Launderalls; that Willis refused; that witness procured some of the machines from another dealer and delivered six new machines to the apartment; that Willis' workmen installed the machines because he had not purchased a service contract; that Willis stated that his plumbers and electricians would not permit others to install these appliances; that Willis procured service, at his own expense, from another agency; that the Launderalls were not properly installed or operated and, as a result, gave trouble; that a manufacturer's warranty was delivered with each machine.

Plaintiff offered in evidence certain statements and admissions made by Mr. Willis, in a deposition. He stated that, as president of Willis Engineering & Construction Company, he entered into a contract between said company and plaintiff for the purchase of six Launderalls, to be installed in the apartment building; that, on June 17, 1948, when the contract was entered into, the building was under construction, excavation then being made; that, when the appliances were delivered most of them were used machines; that the first three Launderalls were installed by Willis' carpenter, and the others by workmen sent by plaintiff; that they proved to be unsatisfactory because they would not stay solid but broke loose from the concrete floor to which they were bolted, lost oil, and cut the hose and switch.

Defendants' evidence was to the effect that Willis Engineering & Construction Company (No. 1) sent out invitations to sub-contractors, including plaintiff, inviting bids for furnishing materials and services; that no contracts were made until several weeks or months thereafter, because there was no money with which to pay anything; that plaintiff submitted a proposal to furnish sixty-two Hardwick gas ranges, six Hot Point driers, and six Launderalls;

that this was done prior to August 6, 1948; that, on the last named date, corporation (No. 1) was dissolved, (later liquidated) and a new corporation by the same name was organized; that on September 2, the R. L. Willis Company transferred the real estate herein to Willis Housing Projects, Inc.; that, on September 8, the latter corporation executed the deed of trust before mentioned; that, on the same date, Willis Housing Projects, Inc., contracted with Willis Engineering & Construction Company (No. 2) for construction of the Fairhaven apartments; that, thereafter, the contract here sued on was accepted and signed by plaintiff and by Willis Engineering & Construction Company (No. 2); that, thereafter, construction began; that none of the appliances herein were contracted for or delivered until after September 8, 1948.

Defendants' evidence tended further to prove that some of the Launderalls were used machines; that plaintiff was to have installed them and did install some of them; that they would not stay bolted in place but broke loose and "danced" over the basement floor; that they became broken, would cause grease to get on the clothing being laundered, and were worthless.

There was evidence to the effect that they were finally removed upon orders of the F.H.A. inspector who, defendants claim, had the power, under plaintiff's contract, to reject any and all materials and work on the project.

The court made findings of fact, to the following effect: 1. That Willis Housing Projects, Inc., entered into a contract with Willis Engineering & Construction Company (No. 1), on June 17, 1948, for construction of the apartments and, on the same day, entered into a contract with plaintiff for the purchase of the ranges, driers and Launderalls heretofore mentioned, which were intended to be, and were installed in the building as part and parcel of the real estate.

2. That on July 18, 1949, plaintiff completed delivery of said appliances, said

Launderalls being sold and delivered by plaintiff on the faith and credit of a lien on the real estate as allowed by the statutes of Missouri.

3. That on October 18, 1949, plaintiff served notice on the owner of the real estate of claim of lien for said Launderalls and, on November 10, 1949, filed in the office of the Circuit Clerk of Jackson County, Missouri, a just and true account of its demand and of its claim for a lien therefor.

4. That Willis Engineering & Construction Company (No. 2) "adopted, ratified, and confirmed" the contract for the purchase and sale of said appliances made by the plaintiff with the Willis Engineering & Construction Company, Inc. (No. 1), accepted delivery of the Launderalls, and caused them to be affixed to and become a part of the realty; that there was privity between the two corporations throughout all the transactions mentioned herein.

5. That the Launderalls became a part of the realty and are lienable, and that all parties defendant had notice thereof.

6. That defendants purchased the Launderalls, relying upon their own knowledge thereof; that plaintiff did not warrant or install, or agree to service them, but that they were installed and serviced by defendants in accordance with the terms of the purchase contract.

7. That any failure of the Launderalls was due to improper installation by defendants.

The above findings of fact are supported by substantial evidence but, in some instances, there is evidence to the contrary. The trial judge was in a better position to judge of the weight and credibility of the conflicting testimony than are we, and we will defer to his judgment in respect thereto.

■ Defendants contend that plaintiff was not entitled to any judgment on account of the Launderalls because they were rejected by the F.H.A. inspector. This contention must be rejected because, under plaintiff's contract, no mention is made of the authority of an F.H.A. inspector to reject the merchandise and, under the evidence, plaintiff's rights were in no wise affected by such rejection, even though the inspector may have had the power to order them out of the apartment under some contract between F.H.A. and *defendants*.

■ Defendants also contend that the Launderalls are not lienable. Under the evidence, these Launderalls were lienable. They were annexed to the concrete floor of apartment by bolts, they were adapted to use in the apartment building, and it was intended by plaintiff and defendants that they become permanent fixtures therein. When they were removed other washing machines were installed and, more than three years after installation, remain in the building. Woodling v. Westport Hotel Operating Company, 227 Mo.App. 1231, 63 S.W.2d 207, 210, cited by defendants supports the above view. See also Glueck & Co. v. Powell, 227 Mo.App. 1226, 61 S.W.2d 406, 408; Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738, 741.

■ It is next contended that there can be no judgment for mechanic's lien because no suit was instituted against the general contractor within ninety days after November 10, 1949, the date notice of lien was filed. Defendants say that, although suit was instituted within the time allowed, such suit was directed to Willis Engineering & Construction Company. (No. 1), which was not in existence; that no suit was instituted against Willis Engineering & Construction Company (No. 2) until that corporation was brought in as a defendant, long after expiration of the time limit; and that the latter corporation is and was the general contractor. It is true that defendants' evidence tended to prove that *no* contract for construction of the building was entered into until September 8, 1948. However, there was substantial evidence on behalf of plaintiff to the effect that a contract for construction was entered into on June 17, 1948, between the owner and Willis Engineering & Construction Company (No. 1). The trial judge so found the fact to be; and he fur-

ther found that there was privity between the two corporations in the various events and transactions that transpired regarding the formation of corporation (No. 1), its dissolution, and the formation of corporation (No. 2), with the same name and same president. A somewhat similar situation as is here presented arose in the case of Board of Education of City of St. Louis ex rel. Johnson Heat Regulating Co. v. United States Fidelity & Guaranty Co., 166 Mo. App. 410, 149 S.W. 46. The court held that, 149 S.W. loc. cit. 49–50, in fact and in law, the corporation which actually constructed the building was a sub-contractor of the partnership which had been awarded the construction contract in the first instance; that there was privity between the original partnership contractor and the later formed corporation builder; and that the original contractor's surety was liable, as would be the owner of real estate in a mechanic's lien suit.

The goods were delivered to and incorporated in the building being constructed by Willis Engineering & Construction Company (No. 2), who was a sub-contractor under the general contractor by the same name. The suit was brought within proper time.

Where, as here, a corporation is dissolved without notice to its creditors and claimants, suit may be instituted within two years after dissolution, upon any claim or liability incurred by it prior to dissolution. Section 351.565 RSMo 1949, V.A.M.S.

There is no question of arbitration involved in this case, by contract or by pleading.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.