THE STATE ex rel. M. C. CONNORS et al. v. NAT
M. SHELTON, Judge, and JOHN C. MILLS,
Receiver.

**In Banc, December 16, 1911.**

1. **PROHIBITION: Return: No Motion for Judgment: Reply:
Practice.** Where the preliminary rule in prohibition to show
cause was ordered and served, and respondent made return,
specifically denying certain vital allegations of the petition and
stating facts which make a case different from that stated in the
petition, to which relator files a reply stating he is without
knowledge or information of certain allegations in the return
and averring that such matters are immaterial, and there is
no motion for judgment on the pleadings and no request for a
commissioner to take evidence, the reply will be treated *ex gratia*
as a demurrer to the return, and all allegations of facts well
pleaded in the return will be taken as true, and those allegations
of the petition specifically denied by the return will be taken
as false.

2. ————: **Existence of Lien.** An absolute writ of prohibition
cannot be predicated on the existence of a lien in favor of the
relators in the railroad properties ordered by the circuit court
to be sold by respondent receiver, where respondents in their
returns deny the existence of the lien and make allegations of
fact which if true entirely defeat a lien, and in view of the state
of the pleadings these allegations must be taken as true.

3. ————: **Delay: Inadequacy of Remedy.** Mere delay, or mere
inadequacy of remedy by appeal arising from mere delay, cannot
be made the sole basis of a writ of prohibition. Delay and in-
adequacy of remedy fill a subsidiary office in prohibition; but
they furnish no ground for the writ. Prohibition is issued to
a court to compel it to desist from the exercise of a jurisdiction
it does not have, or to cease to exercise a jurisdiction in excess
of what belongs to it.

4. ————: **Receivership: Creditors and Lienors as Parties.** In
a proceeding to appoint a receiver for a railroad company credi-
tors are not necessary parties. They have a right to intervene
to be made parties, and lienors may be made parties if they were
such at the time the receiver was appointed.

5. ————: ————: **Attack by Creditors: Waiver.** Creditors of
a railroad company, who sue both the receiver and the company
to establish their debt and lien, thereby recognize the validity
of the prior decree appointing a receiver, and are in no position
to attack that decree.

State ex rel. v. Shelton.

6. ———: ———: **Power of Equity Court.** A court of equity has power to appoint a receiver for an insolvent company on the petition of stockholders where grave corporate questions exist, such as directors false to their trust and guilty of misappropriating the funds, and creditors crying for relief.

7. ———: ———: **Collateral Attack.** The appointment of a receiver cannot be collaterally attacked. Unrevoked by a motion to vacate in the court below or by appeal, the appointment must stand in the face of a collateral attack, such as by a writ of prohibition against the court making the appointment.

8. ———: ———: **Power to Order Sale of Property.** A court of equity does not exceed its jurisdiction in ordering all the properties of an insolvent railroad company to be sold by its receiver previously appointed, where the corporate project has been abandoned or broken down, its property is perishable and deteriorating, there are no corporate means at hand for conserving it, and the interests of creditors and stockholders are best served by the sale.

9. ———: ———: **Order of Sale: Notice: Appearance.** It is not necessary to decide whether the court exceeded its jurisdiction in ordering a sale of the properties in the receiver's hands without notice to creditors, where the order itself shows that the complaining creditors appeared. A voluntary appearance makes notice immaterial.

10. ———: ———: ———: **Collateral Attack.** Where relators, creditors of an insolvent railroad company for which a receiver had been appointed, appeared at the hearing of the application for an order for the sale of the company's properties, and an order was made that directly affects their interests, they had a remedy to dispute the court's power to make the order, by a motion to modify, and that failing, by an appeal, and if they availed themselves of neither, they cannot assail the order by a writ of prohibition.

11. ———: ———: ———: **Appeal.** From an order of sale of the properties of an insolvent railroad company in the hands of a receiver, which directly affects the interests of creditors who have under contract constructed the roadbed, such creditors (under Sec. 2038, R. S. 1909) have an appeal. They are a "party to a suit aggrieved" by a "special order after final judgment in the cause."

## Prohibition.

WRIT DENIED.

*Vroman, Munroe & Vroman* and *John T. Barker* for relators.

(1)  Persons performing labor and doing work upon railroads have a lien thereon on the roadbed, station houses, depots, bridges, rolling stock, real estate, and improvements of such railroad. Sec. 8249, R. S. 1909.  (2)  Where the remedy by appeal is inadequate or not sufficiently speedy, the writ of prohibition is the proper remedy. State ex rel. v. Denton, 128 Mo. App. 314; State ex rel. v. Allen, 45 Mo. App. 557; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Cline, 85 Mo. App. 628; State ex rel. v. Fort, 107 Mo. App. 328; State ex rel. v. Guinotte, 156 Mo. 527; 23 Am. & Eng. Ency. Law, p. 21.  (3)  The court exceeded its jurisdiction when it ordered the receiver to sell this property. The directors of the road were the proper parties to take charge of and manage or dispose of same. State ex rel. v. Foster, 225 Mo. 171; Ashton v. Penfield, 233 Mo. 391. (4) The court exceeded its jurisdiction when it ordered the railroad sold free and clear of all liens and incumbrances. High on Receiver (4 Ed.), sec. 199a; Beech on Receiver (4 Ed.), sec. 199b; Alderson on Receiver (4 Ed.), sec. 602; Blair v. Walker, 26 Fed. 75; Kneeland v. Loan Co., 136 U. S. 89; Railway v. Steel Co., 176 U. S. 257.  (5)  The court exceeded its jurisdiction when it ordered the road sold without notice to plaintiffs or other creditors. Roden v. Helm, 192 Mo. 95; and cases cited under point 4.

*Humphrey & Gose, Edward Higbee, Walter Higbee* and *Paul D. Higbee* for respondents.

(1)  The Hannibal & Northern Missouri Railroad Company is an insolvent domestic corporation. Its failure to comply with the law, to keep its office and records in the State of Missouri, its insolvency, the pendency of suits, interruption and cessation of work, the dissensions in the directory, the voluntary dona-

tion of over 2,000 shares of its capital stock, the condition of the few miles of road bed, bridges and culverts partially constructed, the grading machinery and other property, and their liability and exposure to waste and loss, together with other conditions alleged in the petition for the appointment of a receiver, as found by the court, unquestionably warranted the appointment of a receiver. The mere fact that the railroad company at all times maintained its office and kept its records in a foreign State, in contempt of the laws of this State, subjected it to ouster proceedings; this alone would have justified the appointment of a receiver. Secs. 3035 and 3036, R. S. 1909; 24 Am. & Eng. Ency. Law (2 Ed.), 5; Ralph v. Circuit Judge, 58 N. W. 837; 1 Elliott on Railroads, sec. 547. The appointment of the receiver is conclusive. Thompson v. Greeley, 107 Mo. 589; State v. Foster, 225 Mo. 205. The jurisdiction and power of the court to appoint the receiver is not questioned by relators. The action to enforce the lien against the receiver and the railroad company expressly recognizes the regularity of the appointment. And the court properly ordered the sale of all the property of the railroad company within this State, including its projected line and right of way, as an entirety, at the county seat of Shelby county. Bethune v. Railroad, 149 Mo. 603. (2) The petition for the appoinment of a receiver prayed for an order to sell. The court might well have made the order of sale upon this petition without any formal application by the receiver for an order to sell. 34 Cyc. 313 (3); 17 Ency. Pl. & Pr. 832, note 2. The rule is that notice to parties interested in an application for an order to sell is not essential. 34 Cyc. 313, b, note 60. Order of sale without notice would, at most, be irregular, and not a usurpation of judicial power, and would not authorize a preliminary rule of prohibition. State ex rel. v. Tracy, 237 Mo. 109. (3) Even if relators' lien has been established, the court had power in its discretion to order a sale

free of all liens, "for the proceeds take the place of the property, and whatever rights relators may eventually establish in the latter were transferred to the former." The court's discretion will not be disturbed even on appeal in the absence of a clear showing of abuse. The purpose of the appointment of a receiver is that the assets may be speedily sold and the receivership wound up. Relators' rights are abundantly protected by the order of sale. Mellen v. Moline, etc. Works, 131 U. S., 352; 23 Am. & Eng. Ency. Law (2 Ed.), 1080, (15), 108 g. n. 4. (4) But relators have no lien; that is *res adjudicata*. (5) The relators were present in court, asked for and procured a postponement of the consideration of the petition for an order to sell until after a trial of their action to enforce their lien, and were present in court, and appeared at the time the order of sale was made. The only purpose of notice is to bring parties into court; hence, the fact that formal notice was not served upon relators is immaterial, even if notice were required. Holman v. Farrar, 112 Mo. 54. (6) If the order of sale could be reviewed in this proceeding, it is plain that the intentional inclusion of false and fictitious items and of non-lienable items in relators' lien account vitiated the lien. Daugherty v. Rothbaum, 137 S. W. 83; Carthage, etc. Co. v. Church, 137 S. W. 1028.

LAMM, J.—Prohibition. Relators are M. C. Connors and William Nuttall, doing business in railroad contracting under the firm name and style of M. C. Connors & Company. Respondents are the Hon. Nat M. Shelton, Judge of the Second Judicial Circuit of Missouri, and John C. Mills, receiver of the Hannibal and Northern Missouri Railroad Company, hereinafter called the Company.

This cause is submitted on the bare pleadings. There is no evidence, no formal demurrer to the returns and no motion for judgment. The situation is

this: On the filing of the petition we passed, and had served, a peliminary rule to show cause. Presently respondents made separate returns, admitting some but denying specifically certain other vital allegations of the petition. Further, these returns stated facts putting a case to us quite different from that stated in the petition. Thereupon relators filed a reply to the effect that they were without information or knowledge on certain allegation of facts in the returns, but averring that "said matters are immaterial in this case." It then restates, in effect, some averments of the petition and renews the prayer for an absolute writ of prohibition. Neither side asked for a commissioner to take proofs and report. Such situation springs a question of practice to be disposed of at the outset. We rule thereon as follows:

Present issues of fact, absent evidence upon which those issues can be determined, and present a reply of the kind indicated (followed by a submission of the case on the pleadings) we may, *ex gratia,* treat the reply as a demurrer to the returns. In that view of it we must take all well-pleaded allegations of the returns (not impossible) as true for the purposes of the case. [State ex rel. v. Broaddus, 234 Mo. 1. c. 332.] Or, if by way of extreme grace, we take the reply at bottom and meaning as a motion for judgment on the pleadings, the same result would follow, to-wit, the well-pleaded averments in the returns would be taken as true, and those averments of the petition specifically denied by the returns would be taken as false. [State ex rel. v. Shields, 237 Mo. 329.] In no other way can the issues of fact raised by the pleadings be laid out of view, and vitality and sense be given to the submission.

We are to gather, then, the facts from the forty printed pages of pleadings, excluding relators' petition, except in so far forth as the returns admit its al-

legations.  So gleaning, the facts in small compass follow, viz.:

In 1909 the company was incorporated to build a railroad from Hannibal to Kirksville passing through Marion, Shelby, Macon and part of Adair counties.  Its route lay through a region without railroad facilities, and the people of that region were anxious for a road. Its authorized capital was $2,000,000, divided into 20,000 shares of the face value of $100 each.  In 1910 about nine miles of the proposed road were graded in Marion county, and four in Shelby, but in disconnected portions; some culverts and bridges were partly built on those grades; there were some cross-ties and grading machinery belonging to the company, and the right of way was nearly secured through Marion and Shelby. The people along the line had subscribed and paid various sums of money to aid the enterprise and were expected to subscribe more.  In December, 1910, the company quit being a going concern, laid off all work on the line and work was never resumed.  It was then found that large blocks of its capital stock were wrongfully issued and donated to its directors and officers, that its treasury was looted, that it had continuously violated the law in not keeping a general office for the transaction of its business within this State as provided by section 3035, Revised Statutes 1909, that it had wrongfully kept its office, books, etc., in Chicago, Illinois.  Other usurpations and fraudulent acts upon the part of its officers were found to exist, among them the wrongful dissipation of funds and wrongful appropriation of large sums by the company's president to his own use.  In consequence of all these things dissentions sprang up in the board of directors and made out of question any co-operation and concert of action.  So accentuated was this *intestinal* war that some of its officers denounced others of them by publications, precisely as in a former age a man "posted" his enemy.  The confidence of the people on whom the

company relied for subscriptions was lost, debts accrued amounting to $37,000, with no means to pay. The company became insolvent. Suits were begun against it on over-due notes for $15,000. A lien had been filed by one Simmons (Note: relators' lien was not yet filed) and a suit was pending to enforce Simmons' lien. To add to the corporate chaos and distress, rights of way had been wrongfully taken in the name of some of the promoters which they refused to transfer or put of record, and contracts for construction were let (without advertising for bids) for grossly excessive prices. In short, it was impossible for the company to go on with the construction of the road, and all the work already done faced waste, depreciation and destruction. In that fix on April 5, 1911, some of the *bona fide* resident stockholders brought suit against the company in the Shelby Circuit Court for a receiver, to conserve the property, pay debts, cancel the shares of stock wrongfully donated, wind up the company's affairs, etc. Summons issued and was served, an answer was filed, and on a certain day in April of that year that cause was tried. The chancellor found the issues for plaintiffs and appointed respondent John C. Mills receiver, who gave bond, qualified and took upon himself the burden of the receivership as the arm of the court.

(*Nota bene*: There is no pretense that any motion was filed to revoke the order appointing him receiver, or that the judgment in that case does not stand unappealed from and in *plenary vigor*.)

Thereafter relators, as contractors and materialmen, filed in the proper office what they claimed was a just and true lien account against the company for the purpose of a lien under section 8249, Revised Statutes 1909, and *post*. Thereafter in July, 1911, the present relators as plaintiffs brought suit in the Shelby Circuit Court against both the company and John C. Mills, receiver, upon said alleged lien accounts to enforce

a lien for $16,000. To the petition in that lien case the company and Mills answered separately. Mills's answer alleged that sundry items in the lien accounts were non-lienable, and that two of the items (said to have accrued in March, 1911) were false and fictitious and known to be such by relators when they filed their lien accounts. On the day the receiver filed that answer in the lien case, he also filed a petition in the receivership case for a sale of the company's assets, reciting, *inter alia,* that work had been abandoned, that the property of the company did not exceed $10,000 in value, that the debts due by the company were over $37,000, that its property was perishable and was deteriorating, etc., and he asked an order to sell, free and clear of all liens that might be established, the sale money however to be ordered held subject to any such liens thereafter established. On the day that petition to sell was filed the present relators, Connors and Nuttall, appeared in that matter in court, by their attorneys, and objected to the order of sale being made at that time. At their request the hearing of the petition for an order to sell was by the court postponed until said lien case could be tried. On July 25, 1911, the lien case was tried to the court without the aid of a jury. Taking time to consider till August 3, 1911, on that day being fully advised, the court made a finding in the lien case to the effect that two of the lien items were false and fictitious and known to be so by the present relators when they filed their lien accounts, and that several of the items of the account were non-lienable. The upshot was that the court reduced relators' claim from $16,000, to $14,448.50, denied any lien, and rendered judgment against the company in favor of the present relators for the latter sum.

From that judgment relators appealed to this court. On the same day, but later, the court took up the petition to sell in the receivership case and heard

238 Sup.—19

and determined that application in favor of the receiver. The returns made by respondents in the instant case state the substance of the order of sale, but the order itself is brought here by relators and, as it is brief, we may as well let it speak for itself, viz.:

### ORDER OF SALE.

Now on this 3d day of August, 1911, comes again John C. Mills, Receiver, and presents to the court his petition, filed on July 17, 1911, praying for an order to sell the property of said railroad company; also comes J. L. Simmons, by his attorney, and M. C. Connors and William Nuttall, co-partners as M. C. Connors & Company, by their attorneys Vroman, Munro & Vroman, who have each filed liens for material furnished and work done on the construction of the road-bed of said railroad and at whose instance the hearing on the petition was adjourned to this date, and the court having heard all the evidence upon the petition of said John C. Mills, and the arguments of counsel for and against the prayer of said petition, and the court being now duly advised, it is considered, ordered and adjudged that said John C. Mills, Receiver of said Railroad Company, after giving twenty days' notice of the time, terms and place of sale, and of the property to be sold, in one newspaper of general circulation, published in each of the counties of Shelby and Marion as he may select, do sell at public auction, to the highest bidder for cash, at the south door of the court house in the city of Shelbyville in Shelby county, Missouri, between the hours of ten A. M. and five P. M: on the 2d day of September, 1911, all the right of way of said Hannibal & Northern Missouri Railroad Company, beginning at and in the city of Hannibal, in Marion County, Missouri, through said county and the counties Shelby, and Macon, through and into the city of Kirksville, in Adair county, Missouri, together with all road-bed, bridges, culverts and all other property, real and personal, of and belonging to said Railroad Company, including its franchise to construct, own and operate a railroad, and including its right and franchise acquired from the city of Palmyra, to enter and construct its railroad, depot, side track, switches and sidings in the city of Palmyra, and all grants of land for that purpose.

And it is further ordered that said sale of said property of said railroad company be made as an entirety and free and clear of all liens and encumbrances of every nature, and that the money realized upon such sale be held by the said John C. Mills, Receiver as aforesaid, subject to all liens that have or may be established upon the road-bed or property of said rail-

road company, and be paid out and disbursed only as this court may direct.

Railroad ties, scrapers, tools, machines and all other personal property of said railroad company may be sold separately for cash at such time and place and on such notice as the said Receiver may think best.

Two days later, without any other steps in the circuit court in the order of sale matter, relators lodged here their petition for prohibition to prohibit the court and receiver from executing that order of sale, relying on the following propositions:

(1)     They have a lien for their labor and material.

(2)     Their remedy by appeal in the lien case is inadequate or not sufficiently speedy.

(3)     The court exceeded its jurisdiction when it ordered the receiver to sell the property, the directors being the proper parties to manage or dispose of the same.

(4)     Exceeded its jurisdiction in ordering it sold free and clear of all liens.

(5)     And exceeded its jurisdiction in ordering it sold with no notice to plaintiffs or other creditors.

As said, because of the form of the submission, we have taken the facts from the returns of respondents. If, however, in the determination of any question it is necessary to notice the presence or absence of any material allegation in relators' petition we shall do so while passing on the point.

I think it clear the preliminary rule should be quashed and an absolute writ denied. This, because:

(a)     As to the lien of relators as contractors and materialmen, relators allege such lien exists, whilst respondents in their returns deny its existence and make allegations of facts which if true entirely defeat a lien. With that issue of fact open, with no evidence here on which it can be determined, and with the submission in such form that we must take the averments of the returns as true, manifestly we cannot pred-

icate a right to an absolute writ of prohibition on the existence of a lien. Yet this is precisely what relators ask us to do. They alleged in their petition for a writ that a lien exists. The first proposition in their brief is that one exists and they assert the right to a writ to protect that lien. Now, in order to have a lien, their lien accounts filed with the circuit clerk within ninety days next after the completion of the work or after materials are furnished, must be "just and true." [R. S. 1909, sec. 8251.] An unjust and untrue account, made so intentionally, is in contravention of the statute and cannnot be the basis of a lien. [Dougherty, etc. Co. v. Rothbaum, 156 Mo. App. 215; Carthage, etc., Stone Co. v. Methodist Church, Ibid, 671.] Evidently a writ cannot go unless there is something else in the case.

(b) The next proposition advanced in the brief of relators and in their petition is that their remedy by appeal in the lien case is inadequate and not sufficiently speedy; *ergo,* they say, as we grasp it, they are entitled to prohibition. That proposition opens a wide door to comment and speculation. There are legal precepts to the effect that justice delayed is justice denied; that fresh justice is ever the sweetest; that he gives twice who gives quickly. So, in our Bill of Rights it is ordained that courts of justice shall be open to every person, that certain remedy shall be afforded, etc., "and that right and justice shall be administered without sale, denial or *delay.*" [Art. 2, sec. 10, Const.] But none of those generalities are sufficient legal grounds for the extraordinary writ of prohibition. If mere delay, or mere inadequacy of remedy arising from mere delay, could be made the sole basis for writs of prohibition, then a new and anxious situation would spring; for thereby a litigant would be invited to leave the beaten way, to discard relief by appeal, *certiorari* or error, and seek prohibition as an end-all and cure-all. We could not very well announce a doctrine of

that sort.   Certainly the doctrine of the books does not run that way; nor has this court ever so held.   In jurisprudence the maxim is:   We must have recourse to the extraordinary, when what is ordinary fails. (*Recurrendum est ad, etc.*)   Delay, inadequacy of remedy and hardships springing from the use of other remedies, when present, fill a subsidiary office in prohibition.   But mark, their office is not to furnish a *ground* for the writ.   It is merely to persuade the court to exercise its discretion to issue one in a case where grounds exist, but where peradventure our discretion might incline us to decline the writ because of the existence of some ordinary remedy.   [State v. Elkin, 130 Mo. 1. c. 109.]   Speaking through our Brother Kennish, in State ex rel. Terminal Railroad Association v. Tracy, Judge, in Banc, 237 Mo. 109, we have been so lately and fully over this precise question that a restatement of the law or further exposition of it is out of place.   Excess of exposition of the law (like excess of light to the eye) may be confusing.   Briefly, as injunction against proceedings at law reaches the parties litigant, so prohibition is directed to a court itself to compel it to desist from the exercise of a jurisdiction which it has not, or to cease to exercise a jurisdiction in excess of what belongs to it.

Relators rely, among other cases, on State ex rel. v. Eby, 170 Mo. 497.   There is language in the Eby Case which, taken by itself, lends color to the view that prohibition may go when the remedy by appeal is inadequate, cumbersome or oppressive.   But read with its context and rightly understood, as pointedly put by Kennish, J., in the Terminal Railroad Association Case, it furnishes no countenance or aid to the proposition that mere delay or inadequacy of remedy by appeal affords sufficient ground for the extraordinary writ of prohibition.

(c)   We come next to the question of jurisdiction in the circuit court to make the order of sale.   Under

this head may be grouped the three remaining propositions of relators' counsel, which, for one or another reason, strike at lack of jurisdiction.

(1)    Some preliminary questions lie at the door of the discussion inviting determination to clear the way for the main question. At our bar an attack was delivered against the original decree appointing a receiver. So, in relators' brief it is insisted that the directors of the company are the only ones entitled to the charge and management of the property. The petition in the instant case charges that relators were not made parties to the receivership case. Their petition is susceptible to the construction that they filed their lien as contractors before the receivership suit began. But it sufficiently appears from the returns that the contrary is true, and that the receivership case was not only begun but that a decree was entered therein before such lien was filed. We do not see that relators put their relief on the theory they were not made parties to the receivership suit. We are referred to no authority (and know of none) for the proposition that all creditors must be made parties to the suit. Why make them parties when they have the right to intervene if they see fit? We see no reason why lienors might not be made parties. But relators were not in that class at that time, nor are they in position to attack the decree in the receivership case. This, because:

In the first place they sued both the receiver and the company in the lien case, thereby recognizing the validity of the decree appointing one. They should not face two ways on that proposition.

In the second place a court of equity has power to appoint a receiver on the petition of stockholders where grave corporate conditions exist of the character disclosed by respondents' returns. We so held in a very late case on full consideration. [Ashton v. Penfield, 233 Mo. 391.] It would be unprofitable to reopen

and rediscuss a question there set at rest.  On a review of our own cases and the general doctrines of equity, the remedy of a receivership, whereby a court of equity lifts the hands of incompetent officers and directors false to their trust and guilty of grave corporate misconduct to the detriment of stockholders or creditors, was allowed in the Ashton Case.  It is a strong remedy not to be lightly applied, but where conditions are crying, as here, it is a remedy allowed in equity.  The question whether existing creditors are delayed by such appointment, or have or have not left open to them all their legal remedies to collect their debts is not here for determination.  We can pass on that question when a case is here presenting it.

In the third place the appointment of a receiver may not be assailed collaterally.  Unrevoked by motion below or by appeal, as here, that appointment must stand as against a collateral attack.  [Thompson v. Greely, 107 Mo. 577; State ex rel. v. Foster, 225 Mo. l. c. 205.]

(2)  Did the court exceed its jurisdiction in making any order whatever to sell the property?  We answer, no.  If a court of equity may take over the management of corporate property through its receiver, as we have just held, it may be allowed to act sensibly with it.  I hold this truth to be self-evident, viz.: One of the inherent powers of a court of equity is the right to act with good sense.  If the corporate project has been abandoned, or has broken down, or the property is perishable and is deteriorating; if there are no corporate means at hand for conserving it and the interests of creditors and stockholders are best served by a sale, what good reason can be given why the chancellor, who holds the property of an insolvent corporation through his receiver, may not sell it?  Why hold it till it becomes worthless?  Why return it to the wasteful, inefficient or corrupt hands from which equity rescued it?  An order of sale under such

circumstances is not an unusual incident of a receiver-
ship. [High on Receivers (4 Ed.), sec. 192, *et seq.*]
Such power of sale was guardedly upheld, under excep-
tional circumstances, in Thompson v. Greely, supra,
p. 586 *et seq.* The cases cited by relators do not hold
to the contrary. We rule, then, that unless there is
something else in the case, the court had power to
order a sale.

(3) But relators say there is something else in
the case. Their last two propositions are: First, that
the court exceeded its jurisdiction in ordering a sale
free and clear of liens; second, in ordering a sale with-
out notice to relators or other creditors. These two
propositions may be taken together.

We shall assume it as a proposition to be accepted
without discussion that relators are not entitled to a
writ of prohibition in order to assert the rights, or pro-
tect the property interests of non-complaining credi-
tors who are not parties to the application for the writ.
That branch of the contention is laid out of view.

The petition charges that relators had no notice of
and did not appear to the proceedings looking to a sale.
But unfortunately for them the case made tells another
story. The very copy of the order of sale produced
here by relators shows they not only had notice, but
appeared to the proceeding. A voluntary appearance
makes notice immaterial. [Coleman v. Farrar, 112
Mo. l. c. 72.] We do not say they were entitled to
notice or were not entitled to notice. That particular
question is reserved to be ruled in some case breaking
on the point. In this case we take the fact as we find
it. Under the form of submission we are dealing with,
the allegation in the petition of no notice and no ap-
pearence is drowned in the contrary allegation of the
returns and in the narration of the order itself.

In that view of it, relators had an ordinary
remedy, amply meeting any mischiefs complained of
and attaining the full justice of the case. They had

a remedy by a motion to modify the order. They threw that remedy away and may not now assail the order collaterally. "When a court of equity," says Mr. High (High on Receivers (4 Ed.), sec. 196), "properly acquires jurisdiction of the parties and of the subject-matter in a cause, and appoints a receiver therein and orders him to sell the property in controversy, such order, although irregular and improvident, cannot be assailed or questioned in a collateral action, and such action will not lie to set aside the order of sale and proceedings thereunder. The appropriate method of correcting such irregularities is by motion to the court making the order, and an independent action for that purpose will not be entertained."

Moreover, the order of sale in the terms in which it was couched directly affected the interests of relators. That fact entitled them to an appeal under the provisions of our statute (R. S. 1909, sec. 2038), as that statute has been liberally construed by this court. They were a "party to a suit aggrieved" by a "special order after final judgment in the cause." The former statute in saying who can appeal used the phrase "every person aggrieved." In commenting on that change in the statute this court in Thomas v. Elliott, 215 Mo. l. c. 603-4, said: "We do not construe that act [the present act] as taking away from any one the right of appeal under section 2246, Revised Statutes 1889 [R. S. 1899, sec. 806], although the one says 'every person aggrieved' and the other says 'any party to a suit aggrieved.' " It will thus be seen that to meet the ends of justice we have given to the present act the same wide range of meaning imported by the language of the former act. Hence decisions construing the former act are in point. We shall not prolong this opinion by reviewing them. Samples of them are: *In re* Switzer, 201 Mo. 66; Nolan v. Johns, 108 Mo. 431; State ex rel. v. Talty, 139 Mo. 379; Wauchope v. McCormick, 158 Mo. 660. The Wauchope Case was in

part overruled in the Thomas Case supra, but not in its interpretation of the statute.

In my opinion the *rationale* of those cases, applied to this case, allowed an appeal from the order of sale.

But if at fault in that conclusion, clearly an appeal would lie by relators from the order confirming the sale.

The premises considered, we should not at this time pass on the question whether the order of sale was improvidently or irregularly broad in ordering the sale free and clear of liens. Under conditions present the writ cannot go to test that question, since the court had jurisdiction of the subject matter and parties.

The preliminary rule is quashed and an absolute writ is denied. *Graves, Ferriss, Brown,* and *Kennish, JJ.,* concur; *Valliant, C. J.,* concurs in result; *Woodson, J.,* dissents.