John PUTNAM, William C. Putnam and Putnam Lumber Company, Inc., a partnership d/b/a Nevada Lumber Company, Respondent-Plaintiff,

v.

Francis O. HEATHMAN, Edith Heathman, Lawrence S. Searing, Robert H. Owen, and Home Savings Association of Kansas City, Missouri, Appellant-Defendants.

No. 23714.

Kansas City Court of Appeals.

Missouri.

April 1, 1963.

Shockley, Searing, Reid, Koger & Reid, Kansas City, for appellant.

Amos Wight, Ewing, Ewing, Ewing, Carter & Wight, Nevada, for respondent.

CROSS, Judge.

In this action plaintiff lumber company seeks to recover a money judgment against defendants Francis O. Heathman and Edith Heathman, husband and wife, for the value of labor and materials allegedly furnished them by plaintiff, and to enforce such judgment as a mechanics' and materialmen's lien upon certain real estate— a house and lot formerly owned by the Heathmans, but presently owned by defendant Home Savings Association of Kansas City, Missouri. Defendants Lawrence S. Searing and Robert H. Owen are parties in name only, have no interest in the lawsuit, and are not affected by it. The trial, which was to the court, resulted in a judgment for plaintiff as against defendants Heathman in the sum of $4,277.45, with interest in the further sum of $324.36, a total sum of $4,601.81. The trial court, after ruling that certain account entries in the lien statement designated as "advance labor" and totalling $2000.00, were not lienable items of charge, decreed that the judgment be a special lien upon the mentioned real estate only to the extent of $2,277.45, the amount claimed as the value of the materials furnished and used thereon, with interest computed as $166.41, a total lien sum of $2,443.86. The court further declared the special lien to be prior and paramount to any lien claimed by defendant Home Savings Association. This appeal is prosecuted solely by defendant Home Savings Association and is grounded on the contention that the court erred in impressing the real estate with a lien in any amount whatsoever for the reason that the inclusion of the nonlienable items vitiated the entire lien claim.

The material allegations of plaintiff's petition are to the effect that plaintiff entered into a contract with the Heathmans to furnish labor and materials to be used in improving a dwelling located on real estate owned by them, that the labor and materials were so furnished and used; that the Heathmans failed, upon demand, to pay

for the labor and materials; that a just and true account of the demand due plaintiff was filed as a lien statement in the office of the circuit clerk; that after plaintiff had furnished the labor and materials, the Heathmans executed and delivered a deed of trust on the real estate to defendant Searing, as trustee for defendant Owen, to secure an installment note in the aggregate sum of $3,382.80, given by them to defendant Owen to evidence a loan they had obtained from him; that the note and deed of trust were subsequently transferred to and are presently owned by defendant Home Savings. The prayer of the petition is for judgment against the defendants Heathman in the total sum of the account, and that the judgment be enforced as a special lien against the real estate and declared to be a first and prior lien as against the lien of the mortgage encumbrance held by Home Savings.

Defendants Heathman filed their joint answer admitting all allegations of plaintiff's petition. Defendant Home Savings filed its answer admitting ownership of the note mentioned in the petition, denying the principal allegations of the petition, including the allegation that the lien statement was a just and true account of plaintiff's demand, and praying that the lien of its deed of trust be adjudged paramount and prior to plaintiff's materialmen's and mechanics' lien claim.

Much of the evidence is undisputed. The following facts were established by uncontradicted testimony, by record evidence and by stipulation. Defendants Heathman are husband and wife. On May 20, 1959, they entered into a written contract to purchase the real estate involved, consisting of a house and lot in Nevada, Missouri, for the purchase price of $2000.00, payable in installments of $30.00 per month. The contract provided that the Heathmans would receive a warranty deed from the sellers upon completion of payment. Thereafter and sometime prior to August or September of 1959, the Heathmans contacted plaintiff lumber company's manager, Mr. Dietrich,

and discussed the subject of remodeling their house and requested an estimate of the amount and cost of materials required. The subject of the Heathmans' financial condition was also discussed, and Mr. Dietrich suggested the availability of an F.H.A. loan to pay for the labor and materials necessary for the house improvements. The Heathmans informed Mr. Dietrich that they had little equity in the property and owed more than $1900.00. Mr. Dietrich then suggested that it might be possible that plaintiff would loan Heathman enough money to pay off the indebtedness on the house. No agreement was reached between the Heathmans and plaintiff lumber company at the first meeting above noted. At a second meeting with Mr. Dietrich, and in the absence of Mrs. Heathman, it was agreed between Mr. Heathman and plaintiff lumber company acting through its representative, Mr. Dietrich, that plaintiff would provide Heathman with the money necessary to pay off the indebtedness on the residence property. Subsequently, on January 30, 1960, defendant Heathman received $1900.00 from plaintiff in the form of a check payable to him alone, and on the same day used the money to pay off the balance due on the contract for a deed and received in return the seller's warranty deed, which was duly recorded. Later, on March 7, 1960, plaintiff furnished the Heathmans additional money in the sum of $100.00 which they used to pay a plumbing bill. After receiving and recording their warranty deed, the Heathmans made out an application for an F.H.A. loan and delivered it to Mr. Dietrich. Some time thereafter, Mr. Dietrich informed Heathman the application had been accepted and that he could "go ahead with the work". Defendant Heathman then proceeded to do the contemplated remodeling. He and his sons performed all the necessary labor except the plumbing and electrical work. Heathman testified that extensive improvements were made upon the house and that the total value of the labor done by himself and his sons exceeded $2000.00. Plaintiff furnished and

delivered the building materials used and entered charges therefor in the account submitted to the Heathmans and as incorporated in the lien statement. Plaintiff did not perform, procure or pay for any labor. The F.H.A. loan applied for was not granted to the Heathmans, but on December 16, 1960, they secured a loan from Robert H. Owen and executed their note payable to him in the sum of $3,382.80, together with the deed of trust conveying the real estate to trustee Searing, as above noted. Thereafter, on December 21, 1960, defendant Home Savings purchased the note from Owen. On February 21, 1961, plaintiff filed its mechanics' and materialmen's lien statement, containing account items of charge totaling $4341.10. Both items of cash advanced to the Heathmans, to-wit, the sum of $1900.00 and the sum of $100.00, were entered on the lien statement as "advance labor". The remaining sum of $2341.10 represented charges for building materials furnished.

This suit was duly commenced on March 8, 1961, to enforce the lien as filed. During pendency of the action, and before trial, defendants Heathman defaulted in payment of their note then held by Home Savings, and trustee Searing sold the real estate at its request under the terms of the deed of trust. Home Savings was purchaser at that sale and has made no conveyance of the real estate.

At the trial, plaintiff voluntarily reduced the account claimed against the Heathmans and the amount of the lien statement to the sum of $4277.45 by disclaiming entitlement to certain items of charge for materials which had been inadvertently and erroneously included. No contention was made by Home Savings that the lien statement was not duly filed or that the statement of account for the building materials was incorrect or deficient.

The real issue of fact developed at the trial was whether the cash item of $1900.00 plaintiff turned over to Heathman was a loan to pay off the purchase price of the house, as Home Savings insists, or whether it was a cash advance to pay for labor to be performed on the house as plaintiff lumber company contends. Aside from circumstances from which inferences can be drawn, the only direct evidence on the subject came from defendant Heathman, who was produced by and testified for plaintiff. Plaintiff's former manager Dietrich was no longer in its employ and was not produced at the trial. Witness Heathman's testimony is vacillating and contradictory, but the clear import of it is apparent from certain of his answers quoted as follows:

"Q. Did Mr. Dietrich, the gentlemen from the Nevada Lumber Company, when he first came to see you suggest that, at that time, the Nevada Lumber Company would lend you enough money to pay off your house?

"A. He said it would be plausible (sic)".

*     *     *     *     *     *

"Q. Nonetheless, it was agreed between you that the money would be used to pay off the house, is that correct?

"A. Yes, sir.

"Q. When you got this money what did you do with it?

"A. I went and paid off the man and obtained the deed and went and had it recorded.

"Q. How was the check made out?

"A. Made out personally to me".

*     *     *     *     *     *

"Q. According to this account you were given $1900.00 on January 30th and then again on March 7th you were given another $100.00, why was that?

"A. Well that was to pay for the plumbing labor or part of it.

"Q. Part of it?

"A. Yes. That was what it was used for.

"Q. Why did you get $1900.00 at one time and $100.00 another time?

"A. I didn't need the other hundred then.

"Q. You did need the $1900.00 to pay off, is that correct?
"A. Yes, sir".

\* \* \* \* \* \*

"Q. Mr. Heathman, this morning you testified that there was an understanding that the $1900.00 that you owed on the land at the time you entered into this deal would be paid off with that $2,000.00, isn't that correct?"

\* \* \* \* \* \*

"THE COURT: Was that your testimony this morning?

"A. I believe it was.

"Q. Is it still true?

"A. Yes, sir".

The foregoing quoted testimony of Heathman amply justifies the trial court's finding of fact that the $1900.00 was advanced to Heathman, not for labor or "advance labor", but for use by him to pay off his contracted debt, and that the money was so used. We quote that finding from the trial court's memorandum opinion, as follows:

"As the court sees it, it is not material whether Heathman himself did the work or whether some third party did it, inasmuch as it is clear that there was no employee of plaintiffs who did it. Nor is the intention of the parties for which the money was advanced important, here although denominated as 'labor advanced' and which plaintiffs and Heathman proclaim steadfastly was for labor, it is clear that both these parties knew that $1,900.00 of it was to be used (and was used) to pay off the contract for deed in or-

der that Heathman might receive a deed to the premises from their vendor".

As we stated in the beginning, defendant Home Savings contends that the trial court erred in impressing the lands herein concerned with a special lien in any amount whatsoever. This contention is grounded on reasons stated as follows: (1) because the lien statement includes intentional charges for moneys furnished to Heathman, which items are not lienable by statute; (2) because the intentional inclusion of those nonlienable items renders the lien statement not a "just and true account" of claimant's demand and vitiates the entire lien; and (3) because the nonlienable items for moneys advanced were deliberately included in the lien statement with knowledge that they were not proper charges, and with the intention to mislead the public.

■ The paramount issue of fact in this appeal is the same question that dominated the trial—whether the $1900 advance was for labor or was to be used in payment of the Heathmans' debt on the house. Our decision of this appeal depends substantially upon our determination of the defined fact issue.

Analysis of Heathman's testimony leads us to the same conclusion reached by the trial court as to the intended purpose and use of the $1900.00 paid to Heathman by the plaintiff. We approve and adopt the quoted finding of that court. We believe, and specifically find the fact to be, that the $1900.00 was not for labor, or for "labor advanced", but that it was in the nature of a loan, advanced by plaintiff to Heathman, knowingly, for the express purpose of discharging the Heathmans' obligation under their contract for a deed, so that title to the subject real estate could be vested in them, thereby rendering those premises subject to a lien for the materials plaintiff proposed to sell. This finding is corroborated by plaintiff's own admission contained in the statement of facts set out in

its brief and quoted as follows: "It was agreed that the money paid Mr. Heathman would be used to pay the balance of the purchase price for the house, which was done. * * * On January 30 (1960), $1,900.00 was paid by plaintiff to defendants Heathman and used to pay the balance on the land purchase contract".

█ The rights of the parties here are governed by Chapter 429 V.A.M.S., a body of statutory law creating a species of lien in favor of persons who have performed work or furnished material in and for the erection or improvement of a building. Our lien statutes are based on and justified by the principle that those who have contributed labor or material to the improvement of property are entitled to look to the property for compensation. The lien statutes are said to be "equitable in their purpose or to have an equitable basis" and, that "their aim and purpose being to do substantial justice between the parties, and accomplish what a court of equity could not do." Johnson v. Brill, Mo.Sup., 295 S.W. 558.[1]

█ The provisions of the mechanics' and materialmen's lien statutes are remedial in nature and are given a liberal construction by Missouri courts to carry out their just and beneficial purposes. Nonetheless, since the lien is purely a creature of statute, the policy of liberal construction does not relieve the lien claimant from the necessity of reasonably and substantially complying with the requirements of the statute in order to secure its benefits. Wadsworth Homes Inc. v. Woodridge Corporation, Mo.App., 358 S.W.2d 288. A stricter construction of the lien statutes will be maintained where the rights of third persons, as subsequent purchasers, are affected by the lien claim. Rall Bros. v. McCrary, 45 Mo.App. 365; DeWitt v. Smith, 63 Mo. 263.

Section 429.010 V.A.M.S. creates the right to a mechanics' lien by providing that, "Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, * * * for any building, erection or improvements upon land, * * * shall have for his work or labor done, or materials, * * * furnished, a lien upon such building, * * * and upon the land * * *".

█ The requisite foundation step for the enforcement of a lien claim is prescribed by Section 429.080 V.A.M.S., which makes it the duty of every person seeking the benefit of the lien law to file "a just and true account of the demand due * * * which is to be a lien upon such building * * *". A substantial compliance with that requirement is a condition precedent to the right of a lien claimant to maintain his action and to fix a lien upon the property. In Gill v. Harris, 224 Mo.App. 717, 24 S.W.2d 673, we said, "* * * it must be conceded that 'a just and true account' is the foundation of the right to maintain the suit; and that an unjust and untrue account, knowingly made, forms no basis for a lien, and no foundation for a cause of action to enforce it, but vitiates the entire right of lien. (Citing cases.)" In view of these principles, our immediate inquiry is whether plaintiff's lien statement is a "just and true account".

We find no precise, all-embracing definition of a "just and true account" in the cases which have considered and ruled upon the question. Lien statements have variously been held to be "just and true", or otherwise, as the facts peculiar to each case have warranted. However, certain fundamental rules have been consistently observed by the courts in determining the issue.

█ It is generally recognized that a lien statement may be regarded as "just

---

[1]. Also see: Herrman v. Daffin, Mo.App., 302 S.W.2d 313, 317; 57 C.J.S. Mechanics' Liens § 1a, p. 492.

and true", so as not to vitiate the entire lien, even if it contains mistakes or errors of omission, and includes nonlienable items of charge, *if those inaccuracies of fact are unintentional and are the result of honest inadvertence, accident, or oversight, and do not result from deliberate intention or design.* As the court said in Woodling v. Westport Hotel Operating Co., 227 Mo.App. 1231, 63 S.W.2d 207, "If it is shown that the filing of an inaccurate lien was the result of inadvertence and mistake, there being no intention or desire to defraud, the lien will be upheld." Also see Miners Lumber Co. v. Miller et al., Mo.App., 117 S.W.2d 711; and Hydraulic Press Brick Co. v. McTaggart, 76 Mo.App. 347.

█ On the other hand, it is equally fundamental doctrine that when nonlienable items are included in a lien statement deliberately, knowingly and intentionally, "then the account so filed may not be regarded as 'just and true' within the meaning of the statute, and can form no basis for the adjudication and establishment of a lien for any part of the account". Reese v. Hoyer, Mo.App., 95 S.W.2d 884.[2]

█ There is no fact or circumstance shown by any credible evidence to justify the inclusion of the $1900.00 cash item in plaintiff's lien statement. There is no testimony from any source whatsoever that any work or labor was ever done on the Heathman house by plaintiff or by any person on its behalf. Our finding that the $1900.00 was a cash loan naturally and necessarily induces our further finding that such item is foreign to the intended scope of the lien statutes. The plain language of Section 429.010 can not be interpreted to mean that cash advances are lienable. Even under plaintiff's theory of the transaction—that the $1900.00 was advanced to pay Heathman for future work on his own house (an hypothesis we do not accept as fact)—the item would not have

been lienable. "A mechanic's lien ordinarily may not be acquired for money lent or advanced to a contractor or other person to enable him to purchase material for, or pay for labor upon, a building or other improvement." 57 C.J.S. Mechanics' Liens § 47, page 539. Also see Feeny et al. v. Rothbaum, 155 Mo.App. 331, 137 S.W. 82; Gill v. Harris et al., 224 Mo.App. 717, 24 S.W.2d 673. We rule that the account entry of $1900.00 is a non-lienable item and was improperly included in the lien statement.

Plaintiff's inclusion of the $1900.00 charge in the lien statement must be considered as intentional. At no time has plaintiff claimed that the item was included by mistake or through inadvertence. It was inserted in the petition as well as in the account of demand. Although plaintiff deleted certain admittedly improper items at the beginning of the trial (all of insignificant amount) it made no move to delete the $1900.00 charge. Throughout the entire trial plaintiff contended that it was proper and lienable. Plaintiff still so contends at this hour. Nor are we willing to say that plaintiff's inclusion of the $1900.00 item in the lien statement was prompted by innocent motives. The trial court found from the evidence that "both these parties knew that $1900.00 of it was to be used (and was used) to pay off the contract for deed * * *". The same evidence has induced this court to make the same finding. It is, therefore, our inescapable conclusion that plaintiff deliberately, intentionally and knowingly falsified the $1900.00 item by labeling it "advance labor" when in fact it was intended and used for a different purpose.

█ Plaintiff attempts to demonstrate that the lien account is "true" because the cash items totalling $2000.00 were actually paid to Heathman. In its brief plaintiff says, "That these amounts were received

---

2. Also see State ex rel. Connors v. Shelton, 238 Mo. 281, 142 S.W. 417; Gill v. Harris, 224 Mo.App. 717, 24 S.W.2d 673; Holekamp Lumber Co. v. Skay, Mo.App., 65 S.W.2d 669; Sechrist v. Huffy Rock Asphalt Co., Mo.App., 63 S.W.2d 193.

by Mr. Heathman is nowhere controverted". This argument has no merit. The truth or falsity of plaintiff's lien statement is to be tested according to the validity of plaintiff's account *against the building*, as distinguished from the account for which Heathman was personally liable.

We further believe that plaintiff's lien statement is "unjust", as well as "untrue". By including the nonlienable cash advance of $1900.00 in the lien account filed, and prosecuting this suit thereon, plaintiff has wrongfully burdened the responding defendant's property. The pendency of the lien claim is an encumbrance on the real estate, and would tend to depreciate the market value and salability of the property affected. The defense of the claim has entailed unwarranted trouble and expense. Home Savings has suffered substantial inequity at the hands of plaintiff.

We can not excuse the intentional inclusion of the $1900.00 in the lien account on the ground that plaintiff had the right to test the lienability of the item in court. There is no reasonably debatable question present in this case, either of law or fact, as to whether or not plaintiff was entitled to the $1900.00 credit claimed.

The mechanics' lien law confers special rights upon the class of persons who perform labor and furnish materials. It demands in return a fair and reasonable compliance with its terms. The integrity of that law will not be preserved unless courts protect it from abuse and deliberate violation. In response to that duty, and in accordance with the evidence, we conclude that plaintiff has not complied with the statute in that its lien statement is not a "just and true account", and has thereby forfeited its entire right to a lien.

With respect to the $100.00 item which we have referred to above, we say only that it is nonlienable. In view of our holding that the entire lien is vitiated by the inclusion of the $1900.00 charge, it has become unnecessary to prolong this opinion by any further reference to the $100.00 transaction.

Accordingly, we affirm the judgment insofar as it denies plaintiff's lien claim for labor in the sum of $2000.00, and reverse that portion of the judgment decreeing a special lien upon the real estate to the extent of $2,277.45 for materials furnished and used.

All concur.