John T. OXLEY and W. R. Jensen, Appellants
(Defendants below),

and

Process Engineering Development and Equipment Company, Inc., a/k/a Pedeco,
Inc., et al. (Defendants below),

v.

MINE AND SMELTER SUPPLY CO. et al.,
Appellees (Plaintiffs below).

No. 3631.

Supreme Court of Wyoming.
April 18, 1968.

David Norman Burns, of Burns & Hunt, Jackson, for appellants.

Robert B. Ranck, of Simpson, Kepler, Simpson & Ranck, Floyd R. King, Jackson, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is an appeal by John T. Oxley and W. R. Jensen from the decree of foreclosure entered in two mining lien cases which had been consolidated for trial. The complaints in essence alleged that the defendants had some claim or interest in certain Crystal Claims, Teton County, Wyoming (recorded in Book 9, p. 390 ff., County Clerk, Teton County), and that materials had been furnished by plaintiffs to the defendants or to someone on their behalf, that payment therefor had been neglected or refused, and that liens had been filed on the property. Jensen answered, raising defenses of no claim, no knowledge of the truth of the allegations, and late filing of the liens. Oxley appeared "for the purpose of asserting his defenses as to the property proceeded against in this action, and not submitting himself personally to the jurisdiction of the court," and pleaded lack of jurisdiction of

his person and the subject matter, late filing of the action, insufficient claim for relief, failure to join an indispensable party, insufficiency of process and improper service of process; alleged no knowledge of certain allegations and generally denied the others; but admitted he had an interest in certain improvements on some of the mining claims. He also filed a motion to dismiss on various grounds, one of the bases of which was that "the court lacks jurisdiction because all necessary parties are not joined in said action and cannot be so joined because this action is to foreclose materialmen's liens against certain mining claims owned by the Wyoming Industrial Company which is not a party to this action and cannot be made a party within the time set by law for foreclosing liens on mining claims." The motion to dismiss was denied.

The pretrial order indicates that Oxley admitted plaintiffs delivered to the property involved the material and supplies stated in their liens, that these were duly and timely recorded, and that suit for foreclosure was timely instituted except as to defendant Jensen. The order further shows defendants Oxley and Jensen to have denied that the material and supplies furnished were lienable items or that either of them was liable or responsible for the items involved.

A trial of the cause resulted in a foreclosure of lien judgment from which defendants Oxley and Jensen appeal, asserting three grounds of error, that (1) the court's refusal to dismiss the foreclosure actions because the Wyoming Industrial Company, an indispensable party, had not been joined was fatal, (2) the lien statements were invalid, (3) the service upon Oxley was invalid.

The argument advanced by defendants to substantiate their charge of the trial court's error in denying their motion to dismiss because of failure to join the Wyoming Industrial Company is unpersuasive. The record ownership of the mining claims by that corporation, established by the stipulation of counsel, was not, ipso facto, sufficient to demonstrate its indispensability as

a party. We had occasion to discuss the general subject recently in American Beryllium & Oil Corporation v. Chase, Wyo., 425 P.2d 66, 68, where we approved the well established rule that an indispensable party is one without whose presence before the court a final decree could not be made without either affecting his. interest or leaving the controversy in such a condition that its final determination might be wholly inconsistent with equity and good conscience. The opinion went on to say that whether or not a person is an indispensable party cannot be determined by prescribed formula because the facts peculiar to each case are determinative of that question. At that time we indicated the questions which a trial court ought to consider after determination that a party is interested in the controversy. These were:

1. Is the interest of the absent party distinct and separable?

2. In his absence can the court render judgment between the parties before it?

3. Will the decree made in his absence have no injurious effect on his interests?

4. Will the final determination in his absence be consistent with equity and good conscience?

Only if the court should determine any of these questions in the negative, is the absent party indispensable. Applying this formula to the instant case we have before us no information which would show that any of those questions should have been answered in the negative.

■ By the "Mining Development and Operating Agreement," an exhibit in the case, the Wyoming Industrial Company gave Oxley all its rights to explore, drill, test, mine, extract, remove, produce, and process all minerals found upon or under the lands embraced within the boundaries of the unpatented placer mining claims located in Teton County, described as Crystal Nos. 1, 2, 3, 4, 5, 6, 8, 12, 13, and 14 (recorded 9–11–59, Book 9, pp. 390–396). Admissions in the record seem to show that Oxley thus held an interest legal or equitable in the property and as such was an owner within the provisions of § 29–27, W.S.1957, C.1967. Three of the four cases cited by defendants to support their contention that there was error in denying the motion did not relate to liens and we consider the opinions to be inapplicable and unworthy of discussion. The fourth, Fein v. Davis, 2 Wyo. 118, 123, discloses the reason for the court's declining to approve a lien in that case, namely, that the petition there did not attribute any ownership to the plaintiff.

The pronouncement of the United States Supreme Court many years ago is pertinent in the instant situation: "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience [are indispensable parties]." Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158, 160. Here no judgment was sought or rendered against the Wyoming Industrial Company, which incidentally has not registered any objection to the proceedings although its president was a party; and no showing is made that the judgment issued is inconsistent with equity and good conscience. It follows that there is no justification for the appeal on this aspect of the case.

■ The second contention of error is that the lien statements failed to meet the minimum requirements of the Wyoming statutes and were therefore invalid. Under this heading defendants say that the materials were actually furnished by plaintiffs to Pedeco, which corporation was an independent contractor employed by Oxley to construct and operate the mill, and that there was no privity of contract between the owner of the claims, the Wyoming Industrial Company, and the lien claimants, and that any liability which might accrue to the Crystal Claims is a vicarious liability imposed by statute. Nothing pointed up in this argu-

ment or in the cited cases of Lasich v. Wimpenney, 73 Wyo. 345, 278 P.2d 807, and Putnam v. Heathnian, Mo.App., 367 S.W.2d 823, would indicate invalidity of the lien statements. On the contrary, this admission of Oxley as to his method of arranging for the construction and operation of the mill makes it clear that the materials were furnished at his behest and were used on property in which he had a substantial interest. The insistence that the Bannock Steel Corporation and Southern Idaho Equipment Company lien claims merely state invoice numbers and omit any explanation of the materials furnished is sophistical. We hold such a listing in the lien statements not to be in violation of § 29–34, W.S.1957, C.1967, which requires that the notice shall "set forth the fact that the claimant furnished such materials or services or performed such labor (naming the items thereof)," since the invoices, if not already in the hands of defendants, were subject to production in duplicate form by the court's order during the litigation. In actuality the identification of the materials furnished would be simpler and more positive by the use of invoice numbers, supplemented as allowable by court procedures, than by the employment of the name of the item in the lien statement.

 Addressing ourselves to Oxley's present importunacy that there was invalid service on him, it would seem that his present position is inconsistent with his action in the trial court. His answer there was somewhat ambiguous in stating that he did not submit himself personally to the jurisdiction of the court and in stating that the process against him was wholly insufficient since he left it unclear whether his contention was against the validity of the service against him personally or as to the proceeding in rem to foreclose the liens. However, at the time of pretrial he appeared by counsel and according to the court's report of the conference the plaintiffs then admitted they had no personal jurisdiction of him so that a personal judgment could be rendered, and that portion of the trial court's judgment pertaining to personal liability for any deficiency made no reference to Oxley. At pretrial, Oxley admitted plaintiffs delivered the material and supplies stated in their claims of liens, that the liens were duly and timely recorded, and that suit for foreclosure was timely instituted, denying merely that the materials and supplies furnished were lienable items or that he was liable or responsible therefor. A reasonable interpretation of the record in this regard leads to the conclusion that Oxley submitted himself to the jurisdiction of the court insofar as the proceedings in rem were concerned. Even so, the question of jurisdiction over Oxley in the lien procedure is not dependent upon his voluntary submission. The nub of his discontent as to the jurisdictional aspect is that the service was made by the Oklahoma sheriff on Oxley's receptionist in his office and she was not an "employee then in charge of such place of business," within the provisions of Rule 4(d) (1), W.R.C.P., citing Vanover v. Vanover, 77 Wyo. 55, 307 P.2d 117, 62 A.L. R.2d 931, and Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357. The Vanover case is not germane, particularly since it interpreted a statute which was different from the rule which now controls service of process, and the Milliken case can give defendant small consolation since the court there said, 311 U.S. 463, 61 S.Ct. 342 "Its [service] adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice * * * implicit in due process are satisfied." Certainly, fair play and substantial justice require a holding against this technical objection.

 Study of Rule 4(d) (1) discloses the mentioned provision that the summons and complaint may be served by leaving them "at the defendant's usual place of business with any employee then in charge

of such place of business" to be unique in the context employed. It was apparently taken from § 3–1012, W.C.S.1945, relating to service upon a corporation (not an individual), which in turn was taken from the Ohio statutes, § 5041, R.S.1880, later § 11288, Page's Ohio Code. This court in Stockmen's Nat. Bank of Casper v. Calloway Shops, 41 Wyo. 232, 285 P. 146, 152, analyzed the Wyoming statute, then § 5631, C.S.1920, which like its Ohio counterpart provided first for the summons being served upon the managing agent and if no officer could be found then upon the person having charge. In that case the person served had been a saleslady in a dress shop, and the court discussed at some length the question of whether or not she was a managing agent, deciding that under the circumstances she was such, but regardless of that view summarily disposed of the claimed invalidity of service by saying, 285 P. 152, "if it should be thought that Mrs. Wyman was not its managing agent, undoubtedly she was the person in charge of the usual place of business of the defendant." The instant situation is similar to but stronger than that of the Calloway case. Certainly, in normal business and professional activities the receptionist in an office is an "employee then in charge of such place of business." If not, no message either legal or otherwise could safely be left for a person except by seeking him out personally, even if this occasioned a game of hide and seek. To our knowledge neither the statutes nor rules relating to personal process have been thus rigidly interpreted nor would that be required in order to accomplish fair play, substantial justice, and due process.

Our review of the case discloses a lack of merit in any of the errors charged, and accordingly, the judgment must be affirmed.

Affirmed.